Natea Drafts *v.* Bennett Shelburne Co. and Pennsylvania Manufacturers Association Insurance Co. Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania. Natea Drafts, Appellant.

Argued March 5, 1976, before Judges Crumlish, Jr., Kramer and Rogers, sitting as a panel of three.

*Edward F. Silva,* for appellant.

*David L. White,* with him *John F. McElvenny,* and *James N. Diefenderfer,* for appellees.

Opinion by Judge Kramer, August 11, 1976:

This is an appeal by Natea Drafts from an order of the Workmen's Compensation Appeal Board, dated October 16, 1975, which affirmed a referee's order terminating Drafts' benefits. The only issue is whether Drafts should have been permitted to appeal *nunc pro*

*tunc* under the facts of this case. We hold that the appeal should have been allowed and remand.

On May 13, 1972, Drafts suffered a compensable injury. In recognition of its obligations, the employer's insurance carrier began paying benefits in accordance with a Notice of Compensation Payable which listed *Drafts' address* as 5040 Camac Street, Philadelphia. This is the address of Drafts' employer. Drafts returned to work on October 29, 1972, and a Supplemental Agreement reflecting this fact was filed on April 4, 1973. The Supplemental Agreement indicated that Drafts' address was still 5040 Camac Street.

Drafts' disability recurred on April 30, 1973, and a new Supplemental Agreement reinstating benefits was filed on May 16, 1973. Like the prior agreements, this document was signed by Drafts and indicated his address as 5040 Camac Street.

On November 20, 1974, the employer filed a Petition for Termination or Modification which alleged that the Drafts' disability had ceased on September 12, 1974. This petition also recited the 5040 Camac Street address. Because the petition did not contain a physician's affidavit or an allegation that Drafts had returned to work, it did not afford the employer an automatic supersedeas and, accordingly, the carrier continued to pay benefits to Drafts. The checks reached Drafts through his attorney, to whom they were forwarded.

After the petition was filed a notice assigning the case to a referee was sent to Drafts at the 5040 Camac Street address. Likewise, a notice of hearing was sent to Drafts at the Camac Street address. When Drafts failed to appear at the hearing, the referee granted a continuance and sent another notice to Camac Street. Drafts again failed to appear and the referee granted the employer a summary termination of benefits, no evidence having been received. A copy of this deci-

sion, dated March 24, 1975, with a notation that an appeal to the Board must be taken within 20 days, was sent to Drafts at the Camac Street address.

On April 6, 1975, the carrier stopped paying benefits to Drafts in accordance with the termination order. When the checks stopped arriving, Drafts' counsel inquired by telephone regarding the reason for the carrier's tardiness. The employer alleges that on April 23, 1975, when this call was made, Drafts' counsel was advised for the first time of the termination proceedings. The time for appeal to the Board expired and thereafter Drafts filed an appeal *nunc pro tunc*, which was dismissed. This appeal followed.

As the employer points out, appeals *nunc pro tunc* are rarely permitted and the time limitations of Section 423 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §853 have been strictly enforced. *Dinges Transfer v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 468, 326 A.2d 668 (1974). This rule is not totally inflexible. In *Riley Stoker Corporation v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 533, 308 A.2d 205 (1973) Judge BLATT described the narrow but important bases for allowing appeals *nunc pro tunc*:

"[The courts] have permitted appeals nunc pro tunc only where there is a showing of fraud, or its equivalent. . . . 'The time for appeal cannot be enlarged in the absence of fraud, deception, coercion, or duress.'" (Citations omitted.) 9 Pa. Commonwealth Ct. at 536, 308 A.2d at 206.

In two recent cases, Judge CRUMLISH has pointed out that negligence on the part of an employer or administrative officials may be deemed the "equivalent" of fraud for the purposes of permitting an appeal *nunc pro tunc*. *See Workmen's Compensation Appeal Board v. Gaines,* 24 Pa. Commonwealth Ct.

307, 355 A.2d 595 (1976) and *Unemployment Compensation Board of Review v. Digiacomo*, 24 Pa. Commonwealth Ct. 326, 355 A.2d 604 (1976).

While there admittedly is no indication of active fraud in the instant case, the claimant argues that the "equivalent" of fraud is present inasmuch as the carrier knew (1) that Drafts was represented by counsel (the benefit checks were mailed to Drafts' attorney); (2) the address at which Drafts' counsel (and hence Drafts) could have been reached; and (3) that the various documents and notices were not being received by Drafts, since the postal authorities were returning all of these items with the notation that Drafts had moved and not left a forwarding address. Additionally, we note that the documents of record clearly indicate that the Camac Street address is the correct address of the *employer*, who certainly must have known that Drafts was not living at his place of prior employment. We are thus faced with a rather bizarre situation in which the carrier knows how to contact a claimant through his counsel (and had in fact done so continuously by mailing benefit checks to the attorney) and the employer knows that all of the notices directed to the claimant are being misdirected, yet all of the parties and the referee fail to notify the claimant, or his counsel, that his entitlement to benefits is being challenged, and, eventually, adjudicated to his detriment.

The employer suggests that none of this is of any importance, since the telephone inquiry by Drafts' counsel occurred within the time for appeal. This argument is unpersuasive in light of the fact that a claimant is entitled to a *full* 20-day appeal period, and not just a portion of 20 days. The employer would have us apply the statute strictly in its favor by holding that once 20 days has elapsed an appeal is foreclosed, while it would at the same time have us ignore

the requirement that 20 days, and not two, three, or four days be available to the claimant.

The facts[1] recited above compel us to hold that Drafts has been the victim of the "equivalent"[2] of fraud, and, accordingly, we

ORDER

AND Now, this 11th day of August, 1976, the order of the Workmen's Compensation Appeal Board in the above-captioned matter, dated October 16, 1975, is vacated and it is ordered that this matter be remanded to the Board for the purpose of permitting Natea Drafts (1) to respond to the Petition for Termination of Benefits filed by Bennett Shelburne Company and/or its insurance carrier, the Pennsylvania Manufacturers' Insurance Company; and (2) to proceed as though such response had been timely made; and, it is further ordered that Natea Drafts shall have twenty days from the date of entry of this order to respond to said Petition for Termination of Benefits, after which time, if no response is filed, the Board shall grant the prayer of said Petition.

---

[1] Because of the *ex parte* nature of these proceedings, we are, of necessity, dealing with some facts not of record. Nevertheless, the key facts recited above are matters of agreement, as reflected in the briefs of the parties. Indeed, most of our references to the facts were direct references to the employer's "History of the Case."

[2] By our holding we do not intend to imply that any particular individual or individuals have maliciously acted to deny Drafts his right to a hearing. Rather, it was a combination of circumstances and a distressing breakdown of communications which have given rise to the instant case. Nevertheless, we have no difficulty in concluding that Drafts was somehow forgotten in the course of the dealings between his counsel, counsel for the employer, the employer itself, and the carrier, and that the end result was the "equivalent" of fraud, insofar as Drafts was concerned.